V. F. ZAHODIAKIN ENGINEERING CORPORATION, PLAIN-
TIFF-APPELLANT, v. ZONING BOARD OF ADJUST-
MENT OF THE CITY OF SUMMIT AND THE CITY OF
SUMMIT, DEFENDANTS-RESPONDENTS.

Argued November 26, 1951—Decided January 21, 1952.

388

*Mr. Stanley W. Greenfield* argued the cause for appellant.

*Mr. Fred A. Lorentz* argued the cause for respondent (*Mr. Peter C. Triolo*, attorney).

The opinion of the court was delivered by

HEHER, J. The plaintiff landowner complains of the judgment of the Superior Court, in a civil proceeding at law in lieu of *certiorari* pursuant to *Rule* 3:81–2 of this court, adjudging as *ultra vires* and void two resolutions of the governing body of the City of Summit adopted June 16, 1942, and July 7, 1942, on the recommendation of the local board of adjustment, purporting to grant on certain terms and conditions an "exception" to the terms of the local zoning ordinance for the use of part of plaintiff's lands and the buildings thereon, remodeled or reconstructed as therein particularized, for the "production, finishing and assembling" of "small mechanical precision devices and instruments" and the associated laboratory for research and experimental purposes, and affirming the action of the local board of adjustment taken February 20, 1951, refusing a continuance of the exception for this industrial use on the grounds (a) that such use "would be substantially detrimental to the public good and would impair the intent and purpose" of the local "zone plan and zoning ordinance," and (b) there was no showing of undue hardship.

The case is here by certification on our own motion of an appeal taken by plaintiff to the Appellate Division of the Superior Court.

The *locus* comprises in excess of 15 acres of land situate at the southwest corner of the Morris and Essex Turnpike and River Road in the City of Summit, bounded on the west by the Passaic River, in an "A–10 Residential Zone" delineated by the local zoning ordinance for single-family dwellings. The application for the exception was made by plaintiff, but title to the lands was not taken until June 25, 1942, presumably under a contract of sale whose consummation was conditioned upon the prior allowance of a variance or exception in the terms indicated. The exception was conditioned thus: "In

the event of the bankruptcy or judicial determination of insolvency of the grantee, or the sale or transfer of the premises to any person other than the present stockholders of the grantee, their personal representatives, heirs at law and next of kin, legatees and devisees or a transferee by operation of law," or "in the event that use of the premises for the laboratory and business activities of the grantee as described above or such future laboratory and business activities as may be necessarily incidental thereto is discontinued, the right to use the premises for the non-residential purposes set forth in this paragraph shall terminate; provided, however, that such use may be continued thereafter to the extent, in the manner and for the period authorized by" the local board of adjustment "in its discretion, reasonably exercised, and may be continued without such authorization if the premises are at that time situated in a district designated by" the zoning ordinance "as a business or industrial district." There were requirements that the plaintiff corporation or the "occupant of the premises," as the case may be, submit to the local board of adjustment written bi-annual reports "describing the nature of its business and industrial operations on" the premises "and certifying * * * that the foregoing restrictions and limitations are being adhered to," and also that the deed of conveyance to the plaintiff corporation thereafter to be made contain the foregoing conditions as covenants and agreements by the grantee, for itself, its successors and assigns, "and for the benefit of the grantor, the City of Summit, New Jersey, the owners of residential properties abutting the premises and neighboring residential properties, situated in the area of Summit, New Jersey, known as the 'Canoe Brook Parkway' area, their heirs, personal representatives, successors and assigns"; also these further conditions: that for a period of 20 years from the date of the delivery of the deed of conveyance to the plaintiff corporation, except as provided in the granted exception, no building then on the premises or thereafter erected thereon shall be used for any purpose other than as a detached

one-family private residence or as a garage used in connection with such residence; and that in case of subdivision the lots and buildings shall meet the *minima* as to size and floor area therein prescribed, and no building or structure shall be erected on the premises "within 200 feet easterly of the east bank of the Passaic River" without the written approval of the board of adjustment. The board of adjustment also recommended that no building permit be issued to plaintiff until there was filed with the city clerk a certified copy of a deed of conveyance of the lands to plaintiff "embodying the foregoing covenants and restrictions," and that it be required that the property "be landscaped and maintained as a park, as agreed by" plaintiff. The governing body, by resolution adopted June 16, 1942, approved the recommendation of an exception to plaintiff thus made "subject to limitations, restrictions and agreements" as therein set down. The resolution of July 7 ensuing approved an amendment recommended by the board of adjustment to provide for the incorporation of the foregoing terms and conditions in the deed of conveyance as "covenants and restrictions," and for the landscaping and maintenance of the "property * * * in such a way as to give it the appearance of a private park," in keeping with plaintiff's undertaking. The conveyance to plaintiff was conditioned accordingly.

The gravamen of the complaint is that, in reliance upon the "variance" so provided, plaintiff acquired title to the lands, and thereafter, in 1943, under permits issued by the local authority, erected a brick building thereon "especially designed for its laboratory, industrial and manufacturing purposes" and a building providing facilities for its employees, and has since made such use of the premises, and the refusal of a continuance of the variance would defeat an advantageous sale of the lands presently made by plaintiff conditioned upon its continuance and in the circumstances is capricious, arbitrary and unreasonable. One of the conditions attached to the variance is in part a restraint upon alienation; and its excision is prayed on that account. The City of Summit

was given leave to intervene as a party defendant. The board of adjustment and the city each filed an answer and counterclaim praying that the resolution of the board of adjustment purporting to grant the variance in question and the approving resolutions of the governing body be adjudged null and void as excesses of power, and, at all events, that the variance be adjudged terminated by reason of the discontinuance on January 1, 1950, of plaintiff's "industrial and business activities" on the premises, and for violations of the conditions in certain particulars which need not be stated. The cessation of the permitted variant use is established by the proofs. Indeed, that seems to be conceded. Plaintiff had more than 200 employees in the prosecution of the enterprise at the time of the grant of the variance, but only three or four in May, 1950, and thereafter. Manufacturing was discontinued.

The mere recital of the circumstances demonstrates the vice of the purported exception cited by the landowner. The action thus taken was *coram non judice* and void. The local authority did not undertake to grant a variance from the terms of the ordinance grounded in the statutory consideration of "unnecessary hardship," or an exception according to a standard set by the ordinance in keeping with the statutory policy (*e. g., Schnell v. Township Committee of Ocean*, 120 *N. J. L.* 194 (*Sup. Ct.* 1938), but rather to confer an exception *extra* the statute and the ordinance to serve the interests of the landowner in matters foreign to the principle and policy of zoning as declared by the statute and invoked by the ordinance. The action constituted a special exemption from the operation of the zoning regulation for a limited period pursuant to an agreement made between plaintiff and the local authority prior to the conveyance of the lands under the cited contract providing for a transfer of the title only in the event of the grant of a variance permitting the forbidden use. There was no finding of undue hardship. Indeed, the action under review was not professed to be an exercise of the statutory power to

authorize a variance from the general regulation where, due to "special conditions a literal enforcement of the zoning ordinance would result in unnecessary hardship." *R. S.* 40:55–39(*c*).[1]

The function of the statutory variance is relief against the unnecessary and unjust invasion of the right of private property which under the special conditions and singular circumstances would ensue from the burden of the general rule. The power is to vary in such circumstances the application of the general regulation to serve the statutory policy. *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Potts v. Board of Adjustment of Princeton,* 133 *N. J. L.* 230 (*Sup. Ct.* 1945). Whatever the duration of the variance, whether for a definite or an indefinite period, it must *ex necessitate* be grounded in the policy of the statute. It is axiomatic that a variant use does not derive validity from a mere time limitation. *Lynch v. Hillsdale,* 136 *N. J. L.* 129 (*Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 (*E. & A.* 1948); *Berdan v. City of Paterson,* 1 *N. J.* 199 (1949). Where, as here, there is no pretense of adherence to the statutory principle, but a design to provide a measure of relief outside of the statute itself and in direct conflict with its terms, the action of the *quasi*-judicial agency constitutes an excess of jurisdiction.

Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts. The use restriction must needs have general application. The power may not be exerted to serve private interests merely, nor may the principle be subverted to that end. *Brandon v. Montclair, supra; Appley v. Township Committee of the Township of*

---

[1] The present provision is designed to relieve against "peculiar and exceptional practical difficulties" and "exceptional and undue hardship." *L.* 1949, *c.* 242, *p.* 779.

*Bernards,* 128 *N. J. L.* 195 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 73 (*E. & A.* 1942); *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200 (1949); *Speakman v. Mayor and Council of North Plainfield,* 8 *N. J.* 250 (1951). It was not within the province of the local authority here to vest in the landowner by contract a special privilege or exemption to use its premises in violation of the general rule binding upon all other landowners within the zone. *Lynch v. Hillsdale,* cited *supra; Beckman v. Township of Teaneck,* 6 *N. J.* 530 (1951). The purported contract was *ultra vires* and all proceedings to effectuate it were *coram non judice* and utterly void. *Bauer v. City of Newark,* 7 *N. J.* 426 (1951).

 Here, the action taken was not a mere irregular exercise of the *quasi*-judicial function residing in the local authority. The proceeding was wholly beyond the statute. It was not designed to advance the statutory policy, but to effectuate a contractual undertaking for private benefit in disregard of it. It constituted an arrogation of authority in defiance of the statute and the ordinance. Special hardship from unique circumstances within the principle of the statute and the ordinance was concededly not a point of inquiry. Considerations *dehors* the statute controlled. There was no pretense of the exercise of the statutory function. Whim and caprice rather than the reason and spirit of the statute determined the course taken. There was a deliberate breech of jurisdiction. The proceeding did not constitute a judicial inquiry and adjudication within the frame of the statute. Compare *Hendey v. Ackerman,* 103 *N. J. L.* 305 (*Sup. Ct.* 1927); *Petersen v. Falzarano,* 6 *N. J.* 447 (1951). *Certiorari* affords the means of containing statutory tribunals within their jurisdiction.

 Thus, for want of jurisdiction of the subject matter, the resolution purporting to authorize the exception was utterly void and subject to collateral attack at any time as well as a direct review within the time prescribed by law. It is a corollary to this that the expenditure of moneys to render the lands suitable for the prohibited use does not

operate to validate the void grant. The want of fundamental power cannot be indirectly supplied by the application of the doctrine of estoppel *in pais*. The elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril.

Even under the purported exception, the landowner cannot complain on this score. As we have seen, it was agreed that in the event of the sale or transfer of the lands other than to a stockholder of the plaintiff corporation, or the legal representatives of a stockholder, or a transfer by operation of law, or the discontinuance of the permitted use on the lands, the exception should automatically terminate, subject to renewal by the board of adjustment "to the extent, in the manner and for the period authorized" by the board "in its discretion, reasonably exercised." In the circumstances, the refusal of an extension of the exception cannot be said to be an arbitrary exercise of discretion. The proviso, related to the contextual design eventually to restore the residential character of the area, contemplated a temporary rather than an indefinite continuance during the subsistence of the general rule; and it would seem, according to the letter, that once an extension was granted, however short the period, the power would be exhausted. And the use itself was also made subject to modification. There is no basis, not even the slightest, for branding the action as capricious. It is of no moment that the lands will bring a substantially greater price if the non-conforming use be continued. The landowner was well aware of the limitations of the exception. It did not improve the lands on the faith of a promise by the municipality to prolong the exception in the event of a sale. Quite the contrary. The plant was organized to supply the Navy with mechanical devices and instruments during World War II. Presumably, the business was capitalized on the basis of this

limited user—so long as plaintiff retained ownership and devoted the lands to the stated use.

It suffices to add that the application for a continuance of the variance was grounded, not in the statutory principle of unnecessary hardship, but rather in the agreement embodied in the original resolution and the covenants and conditions of the subsequent deed of conveyance.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.